# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JIMMIE DUNLAP, | ) |
| Plaintiff, | ) |
| | ) No. 13-cv-06301 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| KEVIN SIMS, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jimmie Dunlap is a pre-trial detainee at the Cook County Jail ("CCJ"). He claims that Defendant Kevin Sims, a physician's assistant with Cermak Health – CCJ, acted with deliberate indifference to his serious medical needs by discontinuing his prescriptions for heart condition medication. Dunlap has sued Sims for this alleged violation of his constitutional rights pursuant to 42 U.S.C. § 1983. Before the Court is Sims's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to strike certain allegations and an exhibit pursuant to Federal Rule of Civil Procedure 12(f). (Dkt. No. 20.) For the reasons stated below, Sims's motion to dismiss is denied but his motion to strike is granted.

## BACKGROUND

The following facts are taken from Dunlap's Amended Complaint.[1] In November 2012, Dunlap was diagnosed by Dr. Jaroslav Isak Goldman ("Dr. Goldman") as having a heart rhythm disorder known as atrial fibrillation ("A-fib") and palpitation. (Am. Compl. ¶ 10, Dkt. No. 13.) Dr. Goldman prescribed several medications, including a blood thinner (Pradaxa), which Dunlap was instructed to take twice daily at a dose of 75 miligrams (mg). (*Id.* ¶ 11.) According to the

---
[1] For purposes of the present motion, the Court accepts as true all well-pleaded allegations set forth in the Amended Complaint and draws all reasonable inferences in Dunlap's favor. *See Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013).

discharge summary attached as an exhibit to the Amended Complaint, Dunlap was given 60 capsules (or a 30-day prescription) with no refills. (Am. Compl., Ex. C, Dkt. No. 13-3.)[2]

On May 28, 2013, Dunlap suffered a myocardial infarction (*i.e.*, a heart attack) while in custody at the Village of Skokie Police Department. (Am. Compl. ¶ 13, Dkt. No. 13.) Dunlap was taken to NorthShore Evanston Hospital for treatment, and he believes that as part of his treatment there he was prescribed "the same or similar medications that he had been prescribed in November 2012." (*Id.* ¶ 15.) He received his prescribed medications between May 28 and May 30, 2013, at which time he was discharged from NorthShore Evanston Hospital into police custody. (*Id.* ¶¶ 16-17.)

After Dunlap was discharged, he was booked and transferred to Division 1 of the CCJ, where he met with Sims, a physician's assistant. (*Id.* ¶¶ 18-19.) Dunlap alleges that Sims told him that he "could not believe [Dunlap] was taking so many medications" and that he "believed [Dunlap] was fabricating his medical condition in order to be transferred to a different division." (*Id.* ¶¶ 20-21.) According to Dunlap, Sims also told him that it was not Sims's job "to check [Dunlap's] medical record to see which medications had been prescribed to [Dunlap]," and then Sims decided to discontinue Dunlap's prescribed medications. (*Id.* ¶¶ 22-23.) Dunlap claims that he made Sims aware that he was taking a prescription blood thinner at the time of his arrest and furthermore that Sims saw his medical records confirming the prescription. (*Id.* ¶ 24.)

During the seven-day period from May 30, 2013 to June 5, 2013, Dunlap did not receive any of his prescribed medications. (*Id.* ¶ 25.) Then, on or about June 5, Dunlap began to receive some of his prescribed medications but his blood thinner was not among them. (*Id.* ¶ 26.) Dunlap filed a grievance on June 7, 2013, in which he stated:

---

[2] Attachments to a complaint are effectively incorporated as part of the complaint, *see* Fed. R. Civ. P. 10(c), and properly considered for purposes of a Rule 12(b)(6) motion to dismiss. *Wynn v. Southward*, 251 F.3d 588, 594 (7th Cir. 2001).

2

> I've been complaining about my stomach pain for 3 day. I have high blood pressure, heart problems, and shortness of breath every time I walk up and down these stairs I get short of breath, I came to Cook County Jail from Evanston Hospital on 5-30-13 for a mild heart attack. I have health problems I would like to be move[d to] where I could get medical attention. I also have kidney stones.

(Am. Compl., Ex. A at 2, Dkt. No. 13-1.) The grievance form reflects a response from a physician's assistant on June 21, 2013 stating, "no current need for medical housing, will manage problems in general population." (*Id.*) It also shows, under the "Inmate's Request for An Appeal" section, Dunlap explaining, "I seen Doctor Sims he see that I take a blood thinner and Doctor Sims say I would be sent to a medical unit and he found out I have kidney stone he found out all this." (*Id.*)

On or around July 2, 2013, Dunlap informed his criminal defense attorney that he was not receiving his blood thinner medication. (Am. Compl. ¶ 31, Dkt. No. 13.) On or about July 11, 2013, a state circuit court judge ordered the CCJ to move Dunlap from Division 1 to Division 10, which was an intermediate medical division, and to provide Dunlap with his blood thinner medication.[3] (*Id.* ¶ 32.) On July 11, 2013, Dunlap was prescribed a daily dose of 4 mg of warfarin, another blood thinner medication. (*Id.* ¶ 33.) The warfarin dose was increased over time: from 5 mg per day starting July 22 to 10 mg per day starting August 7, with an additional dose of 2.5 mg to be taken once a week starting October 13. (*Id.* ¶ 34.)

Dunlap claims that, as a result of not receiving his heart medications in a timely manner, he "has suffered from chronic stomach pain since approximately June 4, and now requires higher doses to achieve the benefit of medication." (*Id.* ¶ 35.) He also alleges that Sims's decision to deny him all of his prescribed medications put him at a substantial risk of complications "with

---

[3] Dunlap's appeal of his grievance was rejected on July 15, 2013 with a note to see an attached document indicating that he had been moved to Division 10, an intermediate medical division at CCJ. (Am. Compl., Ex. A at 3, Dkt. No. 13-1.)

potentially life-threatening consequences, including but not limited to stroke or systemic embolism." (*Id.* ¶ 38.) He states that the failure to receive blood thinner medication for the five-week period from May 30 to July 11 resulted in him experiencing pain, suffering, and physical injury (including chronic stomach pain), and needing to ingest a larger daily dose of blood thinner medication. (*Id.* ¶ 39.)

In his Amended Complaint, Dunlap also notes that "there is an ongoing class action lawsuit against the Sheriff of the CCJ for implementing a policy of denying or delaying necessary prescription medication to pre-trial detainees at the CCJ in violation of their Fourth Amendment rights," and references *Parish v. Sheriff of Cook County*, No. 07-cv-04369 (N.D. Ill. filed Aug. 3, 2007). (*Id.* ¶ 3.) Dunlap also makes allegations regarding a 2007 Department of Justice ("DOJ") investigation that identified deficiencies in the medical care provided at the CCJ, including the failure to provide blood thinners and other medications to inmates. (*Id.* ¶ 9.) The Amended Complaint attaches portions of a 2008 letter from DOJ to the Cook County Board President and the Cook County Sheriff reporting the findings of the investigation. (Am. Compl., Ex. B, Dkt. No. 13-2.)

## DISCUSSION

### I. Defendant Sims's Motion to Strike

Sims has filed a motion to dismiss or, in the alternative, to strike certain portions of the Amended Complaint. The Court will consider the motion to strike first.

Sims complains that Dunlap's references in the Amended Complaint to the 2007 class action lawsuit and the 2007 DOJ investigation have no direct connection to him or his alleged misconduct and therefore should be stricken. Under Rule 12(f), a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored; however, Rule 12(f) can nevertheless prove useful and expeditious to 'remove unnecessary clutter from the case.' . . . A motion to strike is appropriate only when the matter at issue is insufficient on the pleadings." *Salam v. Lifewatch, Inc.*, No. 13-cv-09305, 2014 WL 4960947, at *1 (N.D. Ill. Sep. 22, 2014) (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (citation omitted)). "[T]he movant must show that [the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration' and that the allegations are unduly prejudicial." *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997).

Dunlap argues that the ongoing class action lawsuit and DOJ investigation "are relevant to show there are, or were within the recent past, constitutional deficiencies in providing medication to detainees, particularly during intake procedures." (Pl.'s Resp. at 5, Dkt. No. 23.) But Dunlap has not alleged that the investigation or the lawsuit relate to or involve either him or Sims. Dunlap has not filed a class action and he seeks to recover for injuries only to himself for alleged inaction only by Sims in 2013. Dunlap's assertions that his claims have "factual parallels" to both the ongoing class action and the DOJ investigation do not justify including those allegations in the Amended Complaint. Because neither the class action litigation nor the 2007 investigation are directly relevant to Dunlap's claims, and because of the potentially inflammatory nature of the allegations raised in those matters, the motion to strike is granted. The Court therefore will not consider paragraph three, paragraph nine, or Exhibit B when evaluating the motion to dismiss.

## II.     Defendant Sims's Motion to Dismiss

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Pleading facts merely consistent with a defendant's liability and legal conclusions disguised as factual allegations is insufficient. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Section 1983 provides a mechanism for prisoners to bring suit against individuals who cause violations of their constitutional right not to be subjected to cruel and unusual punishment, which includes "a right to adequate medical care." *See Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). "[A] claim based on deficient medical care must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). Deliberate indifference is subjective and to demonstrate it exists, "a plaintiff must show that the defendant 'acted with a sufficiently culpable state of mind,' something akin to recklessness. A prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Id.* at 751 (quoting *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006)). Mere negligence or medical malpractice is not enough to state a deliberate indifference claim, as "the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Arnett*, 658 F.3d at 751 (quoting *Duckworth*, 532 F.3d at 679).

Here, Dunlap alleges that he met with Sims on May 30, 2013, two days after he was admitted to the hospital for a heart attack. Dunlap claims that he told Sims about his heart attack and his prescribed medications, but Sims nonetheless chose to discontinue his medications while stating that he believed Dunlap was fabricating his condition to facilitate a division transfer. As a result, Dunlap did not receive any medication for seven days following his discharge from the hospital, and did not receive his blood thinner for an additional five weeks and only then because a state court judge ordered that he be provided with it. Dunlap alleges that, as a result of the delays in treatment, he suffered stomach pain, shortness of breath, high blood pressure, and heart problems. He also alleges that the delays put him at serious risk of a stroke or systemic embolism, and resulted in him needing to take higher doses of blood thinner medication than would otherwise be necessary.

These allegations, accepted as true, are sufficient for Dunlap's claims to survive a motion to dismiss. "Deliberate indifference can include the intentional delay in access to medical care. A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett*, 658 F.3d at 753. "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). A serious medical need includes "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008).

Dunlap has clearly pleaded a serious condition, given that he alleges that he suffered from a heart attack two days prior to seeing Sims and that he informed Sims he was receiving heart

medication as far back as a year prior to his heart attack. Treatment for a recent heart attack falls into the category of important and noteworthy injuries, and Dunlap also alleges that he was suffering from chronic and substantial pain. Furthermore, it would have been fairly easy for Sims to have provided Dunlap with his prescribed medications.

Failure to provide heart medication can properly state an Eighth Amendment claim for deliberate indifference to medical needs. *See, e.g.*, *Wynn v. Southward*, 251 F.3d 588, 594 (7th Cir. 2001) (plaintiff stated an Eighth Amendment claim for deliberate indifference to his medical needs by alleging that prison officials refused to provide him with his prescribed heart medication, resulting in his heart "fluttering" and putting him at risk of "heavy chest pains"); *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) (plaintiff stated an Eighth Amendment claim for deliberate indifference to his medical needs where he alleged that "he begged to be allowed to keep his heart medication" but was denied by various officers, and that he then "suffered a serious heart attack which he was unable to control due to the unavailability of his medication."). While Dunlap did not suffer from a second heart attack, "even if his condition did not worsen from the delay, deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim." *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039-40 (7th Cir. 2012). The allegations in this case are sufficient to state a deliberate indifference claim, as Dunlap alleges that Sims deliberately discontinued his prescribed medications two days after he suffered a heart attack, failed to provide any medication for a period of seven days, and failed to provide blood thinner medication for five weeks, causing him pain and suffering and putting him at risk of more serious harm.

A number of Sims's arguments for dismissal would require the Court to construe purported gaps in the facts alleged in the Amended Complaint against Dunlap. Sims contends, for

example, that: (1) Dunlap has not alleged that he followed the November 2012 prescription, (2) Dunlap continued to take prescription heart medication after the November 2012 prescription expired, (3) Dunlap cannot show what, if any, medications he was prescribed while at NorthShore Evanston Hospital, (4) Dunlap's grievance did not specifically state that he was not receiving his medicine, and (5) Dunlap had an "unexplained delay" in notifying his attorney about his failure to receive blood medication. (*See* Def.'s Mot. to Dismiss at 9-10, Dkt. No. 20.) But Dunlap was not required to plead these particular facts to state a claim against Sims and it would be inappropriate to draw inferences against Dunlap—as Sims effectively proposes—at the motion to dismiss stage.

Dunlap has pleaded that Sims knew about his previous prescriptions and his heart attack and yet withheld all medications for no stated reason other than that he believed Dunlap was faking his condition. Despite Sims's assertions to the contrary, Dunlap does not seek to hold Sims accountable merely for choosing a different course of treatment than the prior treating physician. Rather, Dunlap claims that Sims deliberately ignored his complaints and prior medical history because Sims believed that Dunlap was faking a medical condition to obtain a transfer to a different division. Dunlap's allegations are sufficient to state a claim and survive a Rule 12(b)(6) motion.

## CONCLUSION

For the reasons stated above, Sims's motion to strike is granted. The allegations in paragraphs three and nine of the Amended Complaint, as well as Exhibit B, are stricken. Sims's motion to dismiss is denied. As Dunlap is currently proceeding *pro se* due to the withdrawal of his previously recruited counsel, the Court will recruit new counsel to represent Dunlap by separate order and set a status date for the parties to appear to discuss a discovery schedule.

ENTERED:

Dated: September 28, 2015

_____
Andrea R. Wood
United States District Judge